# Sackett, et al. v. Kentucky Coal Lands Company.

### (Decided November 10, 1914.)

## Appeal from Harlan Circuit Court.

1. **Land—Ejectment—Natural Monuments — Definite Location. —** While ordinarily natural monuments and not distances control, yet the natural monuments must be located with reasonable certainty.

2. **Land—Ejectment—Natural Monuments — Distances — Conflict.— Evidence.—** In an action in ejectment, held, that in view of the doubt, confusion and uncertainty as to the proper location of the natural monument called for, the distance called for by the patent, and not the natural monument, should control.

CLEON K. CALVERT for appellants.

J. C. JONES and MARTIN T. KELLY for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Reversing.

Plaintiff, Kentucky Coal Lands Company, brought this action in ejectment against defendants, F. M. Sackett and Samuel Creech, to recover a tract of land in Harlan County, and damages for its detention. Defendants denied title of plaintiff and pleaded title in themselves. By agreement, a jury trial was waived, and the case submitted to the court. Judgment was rendered in favor of plaintiff for a portion of the land sued for, and defendants appeal.

Plaintiff has a regular chain of title to so much of the tract of land described in the petition as is covered by the Boyd Dickerson patent No. 8710 for 100,000 acres, issued by the Commonwealth of Kentucky March 4, 1845.

The defendant, F. M. Sackett, claims title to the land under the C. O. Lockard patent No. 51,378 for 40,400 acres, issued November 3, 1873, and it is agreed that the land in controversy lies outside of all exclusions mentioned in that patent.

The defendant, Samuel Creech, claims title to a small portion of the land by virtue of a patent issued to Andrew Hensley, September 15, 1854, and it is agreed that he has a regular chain of title to the land embraced therein.

The land embraced by the Boyd Dickerson patent is described as follows:

"County Harlan on the Cumberland River and Straight Creek. Beginnig at 4 chestnuts, 2 dogwoods and black gum on the top of the Pine Mountain opposite the head of Straight Creek, thence N. 83 E. 100 poles to three white oaks and chestnut; thence S. 18 E. 104 poles to a white oak, chestnut, dogwood and two chestnut oaks on a knott; thence S. 15 E. crossing Cumberland River 1920 poles to a lynn; thence S. 60 W. 9600 poles to a stake; thence N. 15 W. crossing said river 1920 poles to a stake; thence N. 60 E. 5760 poles to a stake; thence north 2240 poles to a stake; thence east 3200 poles to a stake on the Kentucky ridge; thence S. 15 E. 320 poles to the beginning."

It will be observed that the Boyd Dickerson patent is the oldest. The first question presented is: Does it cover the land in controversy? If it does, that disposes of the case. Whether or not it covers the land in controversy depends on the location of the 9th corner of that patent. G. T. Howard, a surveyor for plaintiff, located this corner by extending the last call of the Boyd Dickerson patent to the top of what he calls the Kentucky Ridge. As the 9th line of the Boyd Dickerson survey called for the Kentucky Ridge, he took it to mean that it called for the top of the ridge. In order to reach that point he extended the last call of the survey 35 poles. He also stated that the Kentucky Ridge is the mountain north of Pine Mountain, and divides the waters of the Kentucky River and the Cumberland River up to the point where the Beech Fork cuts the mountain in two, and that is the mountain that he used and took for the main top of the Kentucky Ridge. He had always known all the mountains north of Pine Mountain as the Kentucky Ridge. There is a ridge still further north that might possibly be some higher, but the ridge to which he ran was, in his opinion, the Kentucky Ridge. To reach this point he did not actually survey the patent, but merely extended the last line to reach the top of the ridge. He did not locate the intersection of the last call and the next preceding call on a spur, but on a ridge.

For the defendants, O. J. Conley, a surveyor, testified that he located the beginning corner of the Boyd Dickerson survey. The first call of the Lockard patent runs with the last call of the Dickerson patent reversed. The point where Mr. Howard located the 9th corner of the Boyd Dickerson survey was not on the top of the

Kentucky Ridge, but on a spur between the Dark Hollow and the Beech Fork. In that vicinity there is a perfect bed of mountains known as the Kentucky Ridge. Could not say whether a course from the beginning corner reversed N. 15 W. would intersect with the east course of the Dickerson patent. There is a chain of ridges there known as the Kentucky Ridge.

Defendant, Samuel Creech, testified that he was well acquainted with the Kentucky Ridge. The point claimed by Mr. Howard to be on the Kentucky Ridge is on a spur between two hollows making off to the Beech Fork. The Kentucky Ridge divides the waters of the Middle Fork of the Kentucky River from Straight Creek. The point located by Mr. Howard as the top of the ridge is about 30 or 40 poles from the top.

Counsel for plaintiff insist that as the location of the 9th corner of the Boyd Dickerson survey is simply a question of fact, and as this fact was submitted to the trial court without the intervention of a jury, his finding is equivalent to a finding by a jury, and cannot be reversed unless flagrantly against the evidence. In our opinion, however, the question presented is not one of fact alone. It is a mixed question of law and fact. The question presented is whether or not the natural monument called for in the 9th course of that patent is sufficiently definite and fixed to justify the court in disregarding the distance of the last call. It is the ordinary rule, of course, that natural monuments and not distances control. To apply this rule, however, the natural monuments must be located with reasonable certainty. Plaintiff's surveyor says that while the Kentucky Ridge is the mountain north of Pine Mountain, and divides the waters of the Kentucky River from those of the Cumberland River, he also says: "I have always known all the mountains north of Pine Mountain as the Kentucky Ridge." He also says that while the point at which he located the 9th corner is on the main top of the Kentucky Ridge, yet there are other ridges, but most of them are a great deal smaller in height and size than the main ridge, leading off in different directions. He also says that there is one ridge still further north that may possibly be some higher, but that the ridge that he adopted seemed to be the main ridge that abutted off to the creek known as the Beech Fork, which cuts the Kentucky Ridge in two, and agrees with the ridge on the op-

posite side. For this reason this ridge was adopted by him as the main top of the Kentucky Ridge.

The evidence for the defendants is that there is a perfect bed of mountains north of Pine Mountain, known as the Kentucky Ridge, and that the point where plaintiff located the ninth corner of the Boyd Dickerson survey is not on a ridge, but on a spur. A mere statement of the evidence is sufficient to show how indefinite and uncertain is the proper location of "a stake on the Kentucky Ridge." Plaintiff's surveyor not only admits that there are several ridges, but one of them possibly higher than the ridge that he selected as the proper location. Without knowing the exact location of the ninth line of the Boyd Dickerson survey, he might with equal propriety have adopted the higher ridge, or one of the smaller ridges, as the one to which the last call in the Boyd Dickerson survey should be extended. There is not only uncertainty as to the particular ridge, but uncertainty as to the precise point on the particular ridge. We therefore conclude that in a case like this, where there is such doubt, confusion and uncertainty as to the proper location of the natural monument called for, the distance called for by the patent, and not the natural monument, should control.

Judgment reversed and cause remanded with directions to enter judgment fixing the rights of the parties on the theory that the ninth corner of the Boyd Dickerson survey is located only 320 poles from the beginning corner.